**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |
|---|---|
| MANHATTANLIFE INSURANCE AND ANNUITY COMPANY, PASCHALL AND ASSOCIATES, INC., and WILLIAM C. PASCHALL,<br><br>         *Plaintiffs,*<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, DEPARTMENT OF THE TREASURY, DEPARTMENT OF LABOR, XAVIER BECERRA *in his official capacity as Secretary of Health and Human Services*, JANET YELLEN *in her official capacity as Secretary of the Treasury*, and JULIE A. SU *in her official capacity as Acting Secretary of Labor*,<br><br>         *Defendants.* | Civil Action No. 6:24-cv-00178-JCB |

**DEFENDANTS' COMBINED MOTION TO DISMISS,
CROSS-MOTION FOR SUMMARY JUDGMENT, AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 7

STATEMENT OF THE ISSUES ................................................................................... 9

RESPONSE TO PLAINTIFFS' STATEMENT OF THE ISSUE ................................ 9

BACKGROUND ............................................................................................................ 9

    A. Statutory and Regulatory Background ............................................................ 9

    B. Procedural Background ...................................................................................... 14

LEGAL STANDARDS ............................................................................................... 15

    A. Motion to Dismiss .............................................................................................. 15

    B. Motion for Summary Judgment ........................................................................ 15

ARGUMENT ................................................................................................................ 16

    A. The complaint should be dismissed or transferred, because only ManhattanLife has standing and it cannot establish venue here. ........................................................ 16

    B. The notice requirement was lawfully adopted. ................................................ 19

        i.  The Departments have statutory authority to require a notice. ................... 19

        ii.  The Departments articulated a reasoned basis for requiring a notice. ........ 25

        iii.  The language of the notice is not prohibited by statute, and was reasonably chosen. . 29

        v.  The Departments provided an opportunity to comment on the language of the notice. 31

    C. Any relief should be limited to Plaintiffs' request and the parties before the Court. .......... 33

CONCLUSION .............................................................................................................. 35

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Paxton,*
   65 F.4th 204 (5th Cir. 2023) ................................................................ 17

*American Stewards of Liberty v. U.S. Dept. of Interior,*
   370 F. Supp. 3d 711 (W.D. Tex. 2019) .......................................... 9, 16

*AT&T Corp. v. Iowa Utils. Bd.,*
   525 U.S. 366 (1999) ............................................................................ 20

*Attala Cnty., Miss. Branch of NAACP v. Evans,*
   37 F.4th 1038 (5th Cir. 2022) ............................................................ 15

*Brackeen v. Haaland,*
   994 F.3d 249 (5th Cir. 2021) ................................................. 8, 20, 21

*Braidwood Mgmt., Inc. v. Becerra,*
   104 F.4th 930 (5th Cir. 2024) ............................................................ 35

*Camp v. Pitts,*
   411 U.S. 138 (1973) ............................................................................ 15

*Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.,*
   98 F.4th 220 (5th Cir. 2024) .............................................................. 35

*Cargill v. Garland,*
   57 F.4th 447 (5th Cir. 2023) .............................................................. 35

*Cargill v. Garland,*
   602 U.S. 406 (2024) ............................................................................ 35

*Cent. & S.W. Servs., Inc. v. EPA,*
   220 F.3d 683 (5th Cir. 2000) ............................................................. 35

*Central United Life Ins. v. Burwell,*
   827 F.3d 70 (D.C. Cir. 2016) ..................................................... *passim*

*Chem. Mfrs. Ass'n v. EPA,*
   870 F.2d 177 (5th Cir. 1989) ............................................................. 32

*Choice Inc. v. Greenstein,*
   691 F.3d 710 (5th Cir. 2012) ....................................................... 15, 18

*Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.,*
   2008 WL 686156 (E.D. Tex. Mar. 6, 2008) .................................... 15

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ............................................................................ 17

*Council Tree Investors, Inc. v. FCC,*
   863 F.3d 237 (3d Cir. 2017) .............................................................. 26

*Croft v. Governor of Texas,*
   562 F.3d 735 (5th Cir. 2009) ............................................................. 17

*Dayton Area Chamber of Commerce v. Becerra,*
    2024 WL 3741510 (S.D. Ohio Aug. 8, 2024) ...................................................... 18

*ExxonMobil Corp. v. Mnuchin,*
    430 F. Supp. 3d 220 (N.D. Tex. 2019) .............................................................. 16

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021) .......................................................................................... 25

*FERC v. Electric Power Supply Ass'n,*
    577 U.S. 260 (2016) .......................................................................................... 25

*Haaland v. Brackeen,*
    599 U.S. 255 (2023) ..................................................................................... 8, 20

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) .......................................................................................... 34

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
    143 F.3d 1006 (5th Cir. 1998) .......................................................................... 15

*Huawei Techs. USA, Inc. v. FCC,*
    2 F.4th 421 (5th Cir. 2021) .............................................................................. 32

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................................... 15, 17, 18

*Luminant Generation Co. LLC v. U.S. E.P.A.,*
    714 F.3d 841 (5th Cir. 2013) ............................................................................ 15

*Margolis v. Prudential Ins. Co.,*
    629 F. Supp. 195 (D.D.C. 1985) ....................................................................... 31

*Marshall Cnty. Health Care Auth. v. Shalala,*
    988 F.2d 1221 (D.C. Cir. 1993) ........................................................................ 16

*Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.,*
    602 F.3d 687 (5th Cir. 2010) ...................................................................... 25, 26

*Mourning v. Family Publications Serv., Inc.,*
    411 U.S. 356 (1973) ................................................................................... *passim*

*Nasdaq Stock Market LLC v. SEC,*
    38 F.4th 1126 (D.C. Cir. 2022) ........................................................................ 26

*Nat'l Infusion Ctr. Ass'n v. Becerra,*
    2024 WL 561860 (W.D. Tex. Feb. 12, 2024) .................................................... 18

*Northport Health Servs. of Ark., LLC v. HHS,*
    14 F.4th 856 (8th Cir. 2021) ............................................................................ 26

*Starbucks Corp. v. McKinney,*
    144 S. Ct. 1570 (2024) ..................................................................................... 34

*Stilwell v. Off. of Thrift Supervision,*
    569 F.3d 514 (D.C. Cir. 2009) .................................................................... 26, 28

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n,*
   989 F.3d 368 (5th Cir. 2021) ........................................................................... 32, 32

*Texas Medical Ass'n v. HHS,*
   2024 WL 3633795 (5th Cir. Aug. 2, 2024) ...................................................... 33

*United States v. Florida,*
   938 F.3d 1221 (11th Cir. 2019) ....................................................................... 20

*United States v. Texas,*
   599 U.S. 670 (2023) ......................................................................................... 34

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ......................................................................................... 17

**Statutes**

5 U.S.C. § 703 ........................................................................................................ 34

5 U.S.C. § 705 ........................................................................................................ 35

5 U.S.C. § 706(2) ........................................................................................ 20, 25, 33

26 U.S.C. § 9833 .............................................................................................. 20, 25

28 U.S.C. § 1391(c)(2) .................................................................................... 16, 18

28 U.S.C. § 1391(e)(1) ....................................................................................... 16

28 U.S.C. § 1391(e)(1)(C) .................................................................................. 18

28 U.S.C. § 1406(a) ..................................................................................... 15, 18

29 U.S.C. § 1191c ........................................................................................ 20, 26

42 U.S.C. § 300gg-3 ........................................................................................... 10

42 U.S.C. § 300gg-21(c)(2) ........................................................................... 12, 13

42 U.S.C. § 300gg-91(c) ................................................................................... 11

42 U.S.C. § 300gg-92 ................................................................................... 21, 25

42 U.S.C. §§ 300gg-11 ....................................................................................... 9

42 U.S.C. §§ 300gg-12………………………………………………………………… 9

42 U.S.C. §§ 300gg-41 ....................................................................................... 9

42 U.S.C. §§ 300gg-42 ....................................................................................... 9

Health Insurance Portability and AccountabilityAct of 1996, Pub.L. No. 104-191,
   110 Stat. 1936 ................................................................................................ 9

Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010)............. 10

**Rules**

Fed. R. Civ. P. 12(b)(3) ......................................................................................... 15

Fed. R. Civ. P. 56(a) ............................................................................................. 15

Fed. R. Civ. P. 56(e) ........................................................................................ 18

Fed. R. Civ. P. 12(b)(1) .................................................................................... 15

**Regulations**

69 Fed. Reg. 78,720 (Dec. 30, 2004). ............................................................. 10

79 Fed. Reg. 15,808 (Mar. 21, 2014) ......................................................... 11, 24

79 Fed. Reg. 30,240 (May 27, 2014) ........................................................ *passim*

80 Fed. Reg. 72,192 (Nov. 18, 2015) ............................................................... 10

85 Fed. Reg. 72,158 (Nov. 12, 2020) ............................................................... 10

88 Fed. Reg. 44,596 (July 12, 2023) ......................................................... *passim*

89 Fed. Reg. 23,338 (Apr. 3, 2024) ........................................................... *passim*

## INTRODUCTION

Fixed indemnity insurance pays a flat cash benefit after each qualifying event, without regard to any health care costs incurred by the covered individual.  For example, a policy might pay $50 per visit to a doctor, or $100 for a day of hospitalization, whether or not the beneficiary incurs any costs, or is fully reimbursed by his primary health insurance policy.  When fixed indemnity policies comply with the relevant statutory and regulatory requirements, they are not subject to the federal consumer protections that apply to most health insurance.[1]

Since 2014, fixed indemnity insurance plans sold in the individual market have been required to carry a notice identifying them as "a supplement to health insurance." 45 C.F.R. § 148.220(b)(4)(iv) (2014) (capitalization removed).  Earlier this year, the U.S. Department of Health and Human Services ("HHS") published a rule updating the language of that notice and, in collaboration with the Departments of Labor and the Treasury, requiring that an identical notice be provided for fixed indemnity plans sold in the group insurance market.  89 Fed. Reg. 23,338, 23,380–91, 23,412–13, 23,415–16, 23,418–21 (Apr. 3, 2024) ("Final Rule").  Plaintiffs now challenge the lawfulness of that rule, questioning the Departments' statutory authority to require a notice; the reasonableness of their decision to do so; the statutory basis for the language adopted in the notice; and the rationality of their choice to use that language.  Plaintiffs also contend that the content of the final notice was not a logical outgrowth of the Departments' proposal.

The case should be dismissed or transferred at the outset.  Plaintiffs William Paschall and his insurance sales company are not regulated by the challenged rule and cannot otherwise

---

[1] For ease of usage, this brief generally refers to the coverage provided by health insurance issuers and self-funded group health plans as "health insurance" provided by "insurers."  Although the governing statutes and regulations make some technical distinctions between health insurance issuers and self-funded group health plans, those distinctions generally are not relevant here.

establish that it will injure them.  Their claims must therefore be dismissed for lack of standing. The remaining plaintiff, ManhattanLife Insurance and Annuity Company ("ManhattanLife"), is based in Houston and cannot lay venue here.  In the absence of Mr. Paschall and his business, ManhattanLife's claims should be dismissed for lack of venue or transferred to the United States District Court for the District of Columbia or the Southern District of Texas.

Plaintiffs' claims fail in any event.  The requirement of "a consumer notice that clearly labels fixed indemnity" insurance and informs consumers "that such coverage is not subject to the Federal consumer protections and requirements for comprehensive [health] coverage," *id.* at 23,381, is "reasonably related to the purposes of the enabling legislation" that established those consumer protections, and therefore authorized by the Departments' general rulemaking authority. *Brackeen v. Haaland*, 994 F.3d 249, 354 (5th Cir. 2021) (en banc) (quoting *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 369 (1973)), *aff'd in part and rev'd in part on other grounds*, 599 U.S. 255 (2023).  A desire to ensure that "consumers are informed about the type of coverage they are purchasing," Final Rule, 89 Fed. Reg. at 23,380, is a reasoned basis on which to require such a notice.  Because fixed indemnity benefits are not reimbursement for medical care, but simply a cash benefit paid upon the occurrence of a qualifying event, the notice's plain-English statement that fixed indemnity insurance is "NOT health insurance" is neither prohibited by statute, nor arbitrary.  And finally, interested parties were given fair notice that the Departments were considering the possibility of varying the language presented for comment in the notice of proposed rulemaking.  For all of these reasons, the Departments' rulemaking was lawful and should be upheld.

## STATEMENT OF THE ISSUES

Plaintiffs challenge the Departments' decision to require a fixed indemnity notice as contrary to law, and arbitrarily or capriciously made.  They also challenge the language included in the notice on similar grounds.  And they challenge the adequacy of the opportunity to comment that was provided by the Departments in the rulemaking process.

Before addressing the merits of these claims, the Court must determine whether William Paschall and his business are injured by the notice requirement and, if not, whether ManhattanLife may maintain its suit in this Court in the absence of its co-plaintiffs.

## RESPONSE TO PLAINTIFFS' STATEMENT OF THE ISSUE

The challenged rule is within the Departments' statutory authority, and is the product of reasoned decisionmaking.  Interested parties had an adequate opportunity to submit their comments in the rulemaking process.  The rule should therefore be upheld against Plaintiffs' challenges.

## BACKGROUND[2]

### A.   Statutory and Regulatory Background

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936, generally required health insurers to cover individuals who previously maintained continuous coverage.  42 U.S.C. §§ 300gg-11, 300gg-12 (2006) (group market); 42

---

[2] This background sections serves at the Departments' statement of undisputed material facts.  *See* Local Rule CV-56(a).  In response to Plaintiffs' statement of undisputed material facts, *see* Local Rule CV-56(b), which was similarly a discussion of statutory, regulatory, and procedural background, *see* Mem. at 11–19, the Departments note that the merits of this Administrative Procedure Act case do not present any factual disputes but only the question whether, "as a matter of law," the Departments' "action is supported by the administrative record and consistent with the APA standard of review." *American Stewards of Liberty v. United States Dept. of Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019).  The Departments' response to the portion of Plaintiffs' statement regarding standing appears below, *see infra* at 16–18.

U.S.C. §§ 300gg-41, 300gg-42 (individual market); *see* 79 Fed. Reg. 30,240, 30,244 (May 27, 2014) ("2014 Rule") (explaining that HIPAA "improve[d] access to individual health insurance coverage for certain eligible individuals who previously had group coverage, and . . . guarantee[d] the renewability of all coverage in the individual market.").  It thereby allowed individuals leaving or changing jobs to know that they would still have health insurance available to them, notwithstanding any preexisting conditions.  In 2010, the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119, greatly expanded the protections offered in the group and individual health insurance markets.  Among other things, benefits could no longer be denied on the basis of an individual's preexisting conditions, 42 U.S.C. § 300gg-3, and essential health benefits had to be provided, *id.* § 300gg-6.

HIPAA and the ACA generally implemented these federal consumer protections through parallel amendments to three separate statutes: the Employee Retirement Income Security Act of 1974 ("ERISA"), the Internal Revenue Code, and the Public Health Service Act.  Most employers offering group health insurance are subject to ERISA and the Internal Revenue Code—except for church plans, which are only regulated by the Internal Revenue Code, and non-federal governmental plans, which are covered by the Public Health Service Act.  Health insurance issuers participating in either the individual or group health insurance markets (or both) are subject to the Public Health Service Act.  These separate statutes are, in turn, administered by different agencies: the Department of Labor enforces ERISA, while the Department of the Treasury administers the Internal Revenue Code, and HHS is responsible for the Public Health Service Act.  Regulations implementing HIPAA and ACA protections have often been jointly issued by the three Departments.  *See, e.g.*, 85 Fed. Reg. 72,158 (Nov. 12, 2020); 80 Fed. Reg. 72,192 (Nov. 18, 2015); 69 Fed. Reg. 78,720 (Dec. 30, 2004).

Those federal consumer protections, however, do not apply to certain "excepted benefits," defined at 42 U.S.C. § 300gg-91(c), including "fixed indemnity insurance," *id.* § 300gg-91(c)(3)(B), which is the subject of this case. *See id.* §§ 300gg-21(c)(2), 300gg-63(b).  Fixed indemnity insurance "pays a fixed amount under specified conditions."  79 Fed. Reg. 15,808, 15,818 (Mar. 21, 2014) ("2014 NPRM").  "Benefits under this type of coverage are paid in a flat ('fixed') cash amount following the occurrence of a health-related event, such as a period of hospitalization or illness, subject to the terms of the contract."  88 Fed. Reg. 44,596, 44,601 (July 12, 2023) ("NPRM").  Those "benefits are typically provided at a pre-determined level regardless of any actual health care costs incurred by a covered individual with respect to the qualifying event." *Id.*  For example, a fixed indemnity plan in the individual market might pay "a fixed $50 per visit for doctors' visits, or $100 for a day of hospitalization, different fixed dollar amounts for other various surgical procedures, and/or a fixed $15 per prescription without regard to cost."  2014 NPRM, 79 Fed. Reg. at 15,818.  "Although a benefit payment may equal all or a portion of the cost of care related to an event, it is not necessarily designed to do so, and the benefit payment is made without regard to the amount of medical expense incurred."  NPRM, 88 Fed. Reg. at 44,601.

To be excepted from the consumer protections otherwise mandated by HIPAA and the ACA, fixed indemnity insurance must be independent of any traditional health insurance offered by the same insurer (in the individual market) or plan sponsor (in the group market).  In the language of the ACA, fixed indemnity insurance must a) be "provided under a separate policy, certificate, or contract of insurance," b) lack any "coordination between the provision of such benefits and any exclusion of benefits under any group health plan maintained by the same plan sponsor," and c) pay benefits "with respect to an event without regard to whether benefits are provided with respect to such an event under any group health plan maintained by the same plan

sponsor or, with respect to individual coverage, under any health insurance coverage maintained by the same health insurance issuer."  42 U.S.C. § 300gg-21(c)(2).

Because fixed indemnity insurance lacks many consumer protections generally required by federal law, and therefore generally expected by consumers, in 2014 HHS imposed a notice requirement on all fixed indemnity policies sold in the individual market.  The 2014 regulation required that the following language be "displayed prominently in the application materials":

> THIS IS A SUPPLEMENT TO HEALTH INSURANCE AND IS NOT A SUBSTITUTE FOR MAJOR MEDICAL COVERAGE. LACK OF MAJOR MEDICAL COVERAGE (OR OTHER MINIMUM ESSENTIAL COVERAGE) MAY RESULT IN AN ADDITIONAL PAYMENT WITH YOUR TAXES.

45 C.F.R. § 148.220(b)(4)(iv) (2014); *see* 2014 Rule, 79 Fed. Reg. at 30,341.

Earlier this year, HHS updated the language of that notice and, along with the Departments of Labor and the Treasury, added a parallel notice requirement for fixed indemnity plans sold in the group insurance market.  The Departments were concerned that "[c]onsumers who enroll in [fixed indemnity] plans as a substitute for comprehensive coverage or under the misapprehension that [they] are a lower-cost equivalent to comprehensive coverage are at risk of being exposed to significant financial liability in the event of a costly or unexpected health event, often without knowledge of the risk associated with such coverage."  Final Rule, 89 Fed. Reg. at 23,347.  As the Departments explained, "[t]he typical limits on coverage provided by . . . fixed indemnity [insurance] can lead to more and higher uncovered medical bills than consumers enrolled in comprehensive coverage would incur, exposing consumers with . . . fixed indemnity [insurance] to greater financial risk."  *Id.* at 23,347–48.  "Healthy consumers who enroll in . . . fixed indemnity . . . coverage as an alternative to comprehensive coverage may not realize [that it] . . . excludes or limits coverage for preexisting conditions (including conditions the consumer did not

know about when they enrolled), or conditions contracted after enrollment." *Id.* at 23,348.  These concerns were exacerbated by "potentially deceptive or aggressive marketing of . . . fixed indemnity . . . coverage to consumers who may be unaware of the coverage limits of these plans or the availability of Federal subsidies that could reduce the costs of premiums and out-of-pocket health care expenditures for comprehensive coverage." *Id.* at 23,349.

After providing notice of the proposed rule, and reviewing public comments, the Departments decided to "requir[e] a prominent disclosure notice to consumers who are considering enrolling or reenrolling in individual or group market fixed indemnity . . . coverage," so that "consumers are informed about the type of coverage they are purchasing." *Id.* at 23,380.  The Departments intended this notice to "reduce the potential for consumers to mistakenly enroll in such coverage as their primary source of coverage," "to increase consumer understanding of the differences between fixed indemnity . . . coverage and comprehensive coverage," and to "help ensure that all consumers . . . have the necessary information to make an informed choice after considering and comparing the full range of health coverage options available to them." *Id.*  The Departments adopted the following notice for the group and individual markets:

**IMPORTANT: This is a fixed indemnity policy,
NOT health insurance**

This fixed indemnity policy may pay you a limited dollar amount if you're sick or hospitalized. You're still responsible for paying the cost of your care.

- The payment you get isn't based on the size of your medical bill.

- There might be a limit on how much this policy will pay each year.

- This policy isn't a substitute for comprehensive health insurance.

- Since this policy isn't health insurance, it doesn't have to include most Federal consumer protections that apply to health insurance.

**Looking for comprehensive health insurance?**
- **Visit HealthCare.gov** or call **1-800-318-2596** (TTY: 1-855-889-4325) to find health coverage options.
- To find out if you can get health insurance through your job, or a family member's job, contact the employer.

**Questions about this policy?**
- For questions or complaints about this policy, contact your State Department of Insurance. Find their number on the National Association of Insurance Commissioners' website (**naic.org**) under "Insurance Departments."
- If you have this policy through your job, or a family member's job, contact the employer.

*Id.* at 23,389.  The notice must be provided for plan years or coverage periods beginning on or after January 1, 2025.  *Id.* at 23,391.

**B.     Procedural Background**

Three plaintiffs have filed suit to challenge this notice requirement: ManhattanLife, which has its principal place of business in Houston; Paschall and Associates, Inc., which does business as Paschall Health Insurance and has its principal place of business in Tyler; and William C. Paschall, who owns Paschall Health Insurance, and is also based in Tyler.  Compl. ¶¶ 10–12.  The parties jointly agreed to set a consolidated briefing schedule for dispositive motions that included

14

any "threshold objections to the complaint."  ECF No. 20 at 2.  Plaintiffs have now moved for summary judgment in their favor.  ECF No. 23.

## LEGAL STANDARDS

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint where the court "lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  Each plaintiff must establish standing to bring its own claims.  *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022).  And as the parties asserting federal jurisdiction, plaintiffs bear the burden of proof.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Choice Inc. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

Rule 12(b)(3) authorizes a motion to dismiss an action for "improper venue."  Fed. R. Civ. P. 12(b)(3).  Once a defendant challenges venue as improper, "the burden of sustaining venue will be on [the] Plaintiff."  *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008).  If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

### B.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In an Administrative Procedure Act ("APA") case, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts,* 411 U.S. 138, 142 (1973); *Luminant Generation Co. LLC v. U.S.*

15

*E.P.A.*, 714 F.3d 841, 850 (5th Cir. 2013); *ExxonMobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 228 (N.D. Tex. 2019).  Put differently, "[t]he entire case on review is a question of law, and only a question of law."  *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  In the context of a challenge to an agency action under the APA, "[s]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review." *American Stewards of Liberty v. United States Dept. of Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019).

## ARGUMENT

**A.     The complaint should be dismissed or transferred, because only ManhattanLife has standing and it cannot establish venue here.**

Plaintiffs lay venue in the Eastern District of Texas under 28 U.S.C. § 1391(e)(1) which, as relevant here, provides that suits against "an officer or employee of the United States or any agency thereof acting in his official capacity . . . , or an agency of the United States, . . . may . . . be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides." A corporation bringing suit is "deemed to reside . . . only in the judicial district in which it maintains its principal place of business."  *Id.* § 1391(c)(2).  As a Houston-based corporation challenging a regulation promulgated in the District of Columbia, ManhattanLife could not ordinarily sue in this Court.  *See* Compl. ¶ 10.  Only its co-plaintiffs, Paschall Health Insurance and its owner, William Paschall, reside in Tyler and can therefore lay venue here.  *Id.* ¶¶ 11–12.

But Mr. Paschall and his business lack standing to challenge the fixed indemnity notice requirement, which does not regulate their conduct.  Although Mr. Paschall and his business sell fixed indemnity insurance on a commission basis, they do not issue it.  *See* Compl. ¶ 23.  Nor is there any suggestion that they prepare materials that would be required to carry the fixed indemnity

notice.  *See id.* ("In the normal course of his business, Mr. Paschall uses the brochures and application forms provided by the policy's issuer, including those provided by ManhattanLife."). In their motion for summary judgment, Mr. Paschall and his business suggest that they are nonetheless injured by the notice requirement, in a single sentence with no evidentiary support. They assert that because of the fixed indemnity notice "Mr. Paschall will . . . lose customers and will be forced to attempt to dispel the confusion created by the false notice, risking his reputation (and thus his business) in the process."  Mem. at 19.  This unsupported and conclusory assertion is not enough to support standing, much less at this stage of the litigation.

The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements."  *Lujan*, 504 U.S. at 560.  These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury."  *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61).  The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks omitted)).  And because "[a]llegations of possible future injury" do not suffice, *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990), the alleged injury "cannot be speculative, conjectural, or hypothetical," *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023).

"Since they are . . . an indispensable part of the plaintiff's case, each element [of the standing analysis] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive

stages of the litigation." *Lujan*, 504 U.S. at 561.  At the summary judgment stage, "the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Id.*

The injuries alleged by Mr. Paschall and his business are entirely "speculative, conjectural, [and] hypothetical." *Id.*  And, impermissibly at this stage of the litigation, they are unsupported by affidavits or other evidence.  Mr. Paschall speculates that he will "lose customers" as a result of the fixed indemnity notice, but that is only his speculation, unsupported by any evidence that would lend it credence.  Mem. at 19.  He likewise conjectures that he "will be forced to attempt to dispel the confusion created by the . . . notice," without offering any reason to believe that this is so.  And even if that assertion were supported by evidence rather than speculation, which it is not, it would not constitute an injury in fact.  (His characterization of the notice as "false" is simply incorrect, as discussed below. *See infra* at 31.)  As the parties asserting federal jurisdiction, Mr. Paschall and his business bear the burden of proof.  *Lujan*, 504 U.S. at 561; *Greenstein*, 691 F.3d at 714.  But they have not carried it, and their claims should therefore be dismissed for lack of standing.

If ManhattanLife is the only plaintiff remaining in this case, the complaint should be dismissed for improper venue, or else transferred under 28 U.S.C. § 1406(a).  ManhattanLife does not reside in this District and therefore cannot lay venue here.  28 U.S.C. § 1391(e)(1)(C); *see id.* § 1391(c)(2).  Without its co-plaintiffs, the case must therefore be dismissed or transferred to the United States District Court for the Southern District of Texas or the District of Columbia. *See, e.g.*, *Dayton Area Chamber of Commerce v. Becerra*, 2024 WL 3741510, at *8 (S.D. Ohio Aug. 8, 2024); *Nat'l Infusion Ctr. Ass'n v. Becerra*, 2024 WL 561860, at *1 (W.D. Tex. Feb. 12, 2024)

18

(both dismissing the complaint because the court lacked jurisdiction over the claims of the only plaintiffs who could lay venue).

**B.     The notice requirement was lawfully adopted.**

**i.     The Departments have statutory authority to require a notice.**

Since 2014, fixed indemnity plans sold in the individual market have carried a federally-mandated notice.  *See* 45 C.F.R. § 148.220(b)(4)(iv) (2014).  HHS adopted this "disclosure requirement in order to inform consumers of the nature and extent of fixed indemnity insurance coverage."  2014 Rule, 79 Fed. Reg. at 30,255; *see also* 2014 NPRM, 79 Fed. Reg. at 15,819 (discussing proposal for a "required notice" to individual purchasers of fixed indemnity plans).  No commenter seriously questioned its authority to do so, *see* 2014 Rule, 79 Fed. Reg. at 30,255, and when a precursor to ManhattanLife brought suit challenging other aspects of the rule, it did not take issue with the notice requirement.  *See Central United Life Ins. v. Burwell*, 827 F.3d 70, 75 n.1 (D.C. Cir. 2016) ("HHS's rule . . . requires fixed indemnity application materials to include a notice . . . .  No one has challenged this part of the rule, and we express no opinion as to its validity.").

Earlier this year, HHS updated the language of that notice and, along with the Departments of Labor and the Treasury, added a parallel notice requirement for fixed indemnity plans sold in the group insurance market.  Final Rule, 89 Fed. Reg. at 23,389; *see* NPRM, 88 Fed. Reg. at 44,620 (proposing "to require a consumer notice . . . when offering fixed indemnity . . . coverage in the group market, in alignment with the existing requirement to provide such a notice in connection with fixed indemnity . . . coverage [offered] in the individual market"); Final Rule, 89 Fed. Reg. at 23,380 (explaining that the Departments were "requiring a prominent disclosure notice to consumers who are considering enrolling or reenrolling in individual or group market fixed

indemnity . . . coverage").  Plaintiffs now challenge the Departments' decision to do so as beyond

their statutory authority and contrary to law.  *See* 5 U.S.C. § 706(2)(A), (C).

"[T]he Supreme Court has held that '[w]here the empowering provision of a statute states

simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out

the provisions of this Act' . . . the validity of a regulation promulgated thereunder will be sustained

so long as it is 'reasonably related to the purposes of the enabling legislation.'"  *Brackeen*, 994

F.3d at 354 (quoting *Mourning*, 411 U.S. at 369) (all but first alteration in original).[3]  As the en

banc Fifth Circuit recently affirmed, "the Supreme Court's holdings in *Mourning* and related

cases" emphasize "the breadth of authority delegated by broadly worded rules-enabling statutes."

*Id.* at 355 n.65; *accord United States v. Florida*, 938 F.3d 1221, 1230 (11th Cir. 2019) (quoting

*Mourning*, 411 U.S. at 369); *see, e.g.*, *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 377–78 (1999)

(determining that the Federal Communications Commission had authority to issue regulations

based on statutory language permitting the agency to "prescribe such rules and regulations as may

be necessary in the public interest to carry out" the statute).

As discussed above, the federal consumer protections enacted in HIPAA and the ACA were

generally codified in parallel amendments to three separate statutes: ERISA, the Internal Revenue

Code, and the Public Health Service Act.  Each statute empowers the agency that enforces it to

"promulgate such regulations as may be necessary or appropriate to carry out the provisions" of

HIPAA and the ACA.  26 U.S.C. § 9833 (Internal Revenue Code); 29 U.S.C. § 1191c (ERISA);

---

[3] The en banc Fifth Circuit produced a complicated set of opinions in *Brackeen*.  The question of
statutory authority for the challenged regulation was discussed in Part II(D)(2) of Judge Dennis's
opinion, which was the en banc majority opinion on that issue.  *See* 994 F.3d at 269 n.12 (per
curiam opinion summarizing holdings).  All quotations from *Brackeen* are taken from that part
of the en banc opinion.  The question of statutory authority was not before the Supreme Court in
*Haaland v. Brackeen*, 599 U.S. 255 (2023), which affirmed the Fifth Circuit on some of the
grounds before the Court, and reversed for lack of standing on others.

42 U.S.C. § 300gg-92 (Public Health Service Act).  These provisions are "substantively identical to other statutes conferring broad delegations of rulemaking authority," *Brackeen*, 994 F.3d at 354, and regulations issued under them must therefore be upheld if "reasonably related to the purposes of the enabling legislation," *Mourning*, 411 U.S. at 369.

The Departments relied on this broad rulemaking authority in promulgating the updated notice requirement, concluding that it was necessary and appropriate "to adopt a consumer disclosure notice in regulation to ensure that the statutes themselves function as Congress intended."  Final Rule, 89 Fed. Reg. at 23,381 (noting that "Congress provided the Departments with explicit authority to promulgate regulations as the Secretaries determine may be necessary or appropriate to carry out the provisions of the [Internal Revenue] Code, ERISA, and the [Public Health Service] Act").  In doing so, the Departments reasoned that "[c]onsumers cannot adequately access Federal consumer protections to which they are entitled when it is unclear to which products they apply, and the effects of these protections are diluted when consumers are unclear what type of product they are purchasing and how and when they are protected by Federal law."  *Id.*  Adequate notice is critical, because "[c]onsumers who purchase fixed indemnity . . . coverage under the mistaken impression that such coverage is subject to Federal consumer protections and requirements for comprehensive coverage are at significant risk of financial and health hardships that may not become clear to the consumer until the occurrence of a costly health event."  *Id.*  The Departments therefore determined that it was "necessary and appropriate for plans and issuers to provide consumers with a consumer notice that clearly labels fixed indemnity . . . coverage and provides consumers with information sufficient to notify the consumer that such coverage is not subject to the Federal consumer protections and requirements for comprehensive coverage."  *Id.*

A regulation requiring insurers to inform consumers that fixed indemnity insurance is not subject to the federal consumer protections and requirements for comprehensive health coverage, so that consumers may make an informed decision about whether to forego those protections, is "reasonably related to the purposes of the enabling legislation" that established the protections, and therefore within the Departments' broad statutory authority. *Mourning*, 411 U.S. at 369.

Plaintiffs make a formalistic objection to the way in which the Departments drafted the notice requirement, by incorporating it into the regulatory definition of fixed indemnity insurance. In their words, "[t]he Departments did not write the notice requirement as a freestanding regulation," but rather "as a condition of exemption" from the otherwise applicable consumer protections. Mem. at 24. But there is no practical difference between the two. A regulation that says, "Fixed indemnity insurance must carry this notice" and one that says, "A policy must carry this notice to be considered fixed indemnity insurance," mean the same thing in practice.

This case is far afield from *Central United*, on which plaintiffs principally rely. That case was a challenge to another aspect of the 2014 rule that required a notice for fixed indemnity plans sold in the individual market. The regulation challenged in *Central United* said that fixed indemnity plans could only be sold to individuals who also had "minimum essential coverage"— *i.e.*, comprehensive health insurance that satisfied the requirements of the Affordable Care Act's "individual mandate." It incorporated this requirement into the regulatory definition of fixed indemnity insurance, which meant that "those who had previously purchased [fixed indemnity] plans as a substitute for minimum essential coverage" could no longer do so, and instead "would have to find a fixed indemnity plan that satisfies the [ACA's] coverage requirement for non-excepted benefits." *Central United*, 827 F.3d at 73. But as the D.C. Circuit pointed out, "[t]he very nature of fixed indemnity insurance . . . renders such plans incapable of satisfying these

22

requirements, so this new rule effectively eliminated *stand-alone* fixed indemnity plans altogether." *Id.* The *Central United* court concluded that that was an impermissible "attempt to regulate consumers under a provision directed at [insurance] providers," by forbidding the purchase of fixed indemnity coverage by anyone who did not also carry comprehensive health insurance. *Id.* at 74. It was the substantive effect of the regulation—imposing a prohibition on the purchase of fixed indemnity insurance by certain individuals—and not its form that drove the outcome in *Central United*. Although the rule challenged in that case incorporated its prohibition into the regulatory definition of fixed indemnity insurance, it would have fared no better as a stand-alone rule that said, "No one may purchase fixed indemnity insurance unless they also purchase comprehensive health insurance." The *Central United* court found that the rule was substantively impermissible. But the rule challenged here is not.

Plaintiffs fare no better suggesting that the Departments' defense of the notice requirement as an exercise of the Departments' broad rulemaking authority to carry out the provisions of HIPAA and the ACA is a post-hoc rationale. Mem. at 24–25. Plaintiffs point to preamble language in which the Departments suggested that "the rules do not require the provision of a notice, but instead simply provide that insurance offered without such a notice would not qualify as fixed indemnity excepted benefits coverage and would be subject to the Federal consumer protections and requirements applicable to comprehensive coverage." Final Rule, 89 Fed. Reg. at 23,382. As the D.C. Circuit observed in *Central United*, however, that is tantamount to requiring a notice, because "[t]he very nature of fixed indemnity insurance . . . renders such plans incapable of satisfying those requirements." *Central United*, 827 F.3d at 73. And the rule at issue here described the Departments to be "requiring a prominent disclosure notice to consumers who are considering enrolling or reenrolling in individual or group market fixed indemnity . . . coverage,"

Final Rule, 89 Fed. Reg. at 23,380, just as the 2014 rule had adopted a "disclosure requirement" in the individual market, 79 Fed. Reg. at 30,255.[4]

Finally, Plaintiffs argue that the notice requirement is prohibited by statute, because "[t]he whole point of the exemption [from HIPAA and ACA consumer protections] is to *deny* the Departments regulatory authority over excepted benefits that meet the statutory conditions." Mem. at 25. This argument overreads the statutory exemption. HIPAA and the ACA do not leave regulation of fixed indemnity insurance exclusively to the states rather than the federal government. If fixed indemnity insurance is coordinated with any comprehensive health insurance offered by the same insurer (in the individual market) or plan sponsor (in the group market)—that is, if exclusions from comprehensive health insurance are paired with fixed indemnity benefits, or fixed indemnity benefits are conditioned on coverage or non-coverage by comprehensive health insurance—then it is subject to HIPPA and ACA consumer protections. Those statutes therefore directly regulate fixed indemnity insurance. And as the D.C. Circuit noted, to say that such fixed indemnity plans must provide the HIPPA and ACA consumer protections is effectively to prohibit their sale. *See Central United*, 827 F.3d at 73. When it enacted HIPAA and the ACA, Congress regulated fixed indemnity insurance, required various consumer protections in traditional health insurance, and gave the Departments authority to "promulgate such regulations as may be

---

[4] *See* Final Rule 89 Fed. Reg. at 23,380 (explaining that "the Departments proposed to <u>require</u> a consumer notice be prominently displayed when offering fixed indemnity excepted benefits coverage in the group market, in alignment with the existing <u>requirement</u> to provide such a notice when offering fixed indemnity excepted benefits coverage in the individual market"); *id.* at 23,381 (announcing that "the Departments are of the view that <u>requiring</u> issuers to provide the consumer notice contemporaneously with marketing, application, and enrollment materials" is prudent) (all emphases added); *see also* NPRM, 88 Fed. Reg. at 44,620 (proposing "to require a consumer notice"); 2014 NPRM, 79 Fed. Reg. at 15,819 (discussing the 2014 proposal for a "required notice" to individual purchasers of fixed indemnity plans); *Central United*, 827 F.3d at 75 n.1 ("HHS's rule . . . requires fixed indemnity application materials to include a notice . . . .").

necessary or appropriate to carry out the provisions" of those statutes.  26 U.S.C. § 9833; 29 U.S.C. § 1191c; 42 U.S.C. § 300gg-92.  That authority is more than sufficient to support a notice requiring "plans and issuers to provide . . . a consumer notice that clearly labels fixed indemnity excepted benefits coverage and provides . . .  [the] information . . . that such coverage is not subject to the Federal consumer protections and requirements for comprehensive coverage."  Final Rule, 89 Fed. Reg. at 23,381.

> ii.    **The Departments articulated a reasoned basis for requiring a notice.**

Plaintiffs next argue that the Departments' decision to require a fixed indemnity notice was arbitrary and capricious.  *See* 5 U.S.C. § 706(2)(A).  "Judicial review under [the arbitrary and capricious] standard is deferential, and a court may not substitute its own policy judgment for that of the agency."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  In evaluating whether an agency action is arbitrary and capricious, "[a] court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives."  *FERC v. Electric Power Supply Ass'n*, 577 U.S. 260, 292 (2016).  Rather, the Court must ensure "that the agency has acted within a zone of reasonableness."  *Prometheus Radio*, 592 U.S. at 423.  Plaintiffs have "the burden of proving that the [Departments'] determination was arbitrary and capricious."  *See Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010).  But they cannot do so.

As explained above, the Departments adopted the challenged notice requirement so that "consumers are informed about the type of coverage they are purchasing."  Final Rule, 89 Fed. Reg. at 23,380.  The Departments intend the notice to "reduce the potential for consumers to mistakenly enroll in such coverage as their primary source of coverage," "to increase consumer understanding of the differences between fixed indemnity . . . coverage and comprehensive

coverage," and to "help ensure that all consumers . . . have the necessary information to make an informed choice after considering and comparing the full range of health coverage options available to them."  *Id.*  That explanation is perfectly reasonable, and more than enough to survive arbitrary and capricious review.

Plaintiffs suggest that "the agency must offer evidence supporting the existence of the problem it seeks to address," and then argue that the Departments have not done so.  Mem. at 26. But "[t]he APA imposes no general obligation on agencies to produce empirical evidence.  Rather, an agency has to justify its rule with a reasoned explanation."  *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009) (Kavanaugh, J.); *accord Northport Health Servs. of Ark., LLC v. HHS*, 14 F.4th 856, 873 (8th Cir. 2021) (quoting *Stilwell*).  As discussed above, the Departments have done just that.  "Moreover, agencies can, of course, adopt prophylactic rules to prevent potential problems before they arise.  An agency need not suffer the flood before building the levee."  *Stilwell*, 569 F.3d at 519; *accord Nasdaq Stock Market LLC v. SEC*, 38 F.4th 1126, 1143 (D.C. Cir. 2022) (explaining "[t]hat the Commission's . . . worry has not yet manifested itself is of little consequence" in assessing the validity of its action to address that concern); *Northport*, 14 F.4th at 874; *Council Tree Investors, Inc. v. FCC*, 863 F.3d 237, 243 (3d Cir. 2017) (both quoting *Stillwell*).  So even if the Departments were anticipating potential issues in consumer awareness and seeking to head them off, their actions would still be adequately justified.

Rather than confront the reasons offered by the Departments in support of the fixed indemnity notice requirement, Plaintiffs build a straw man and then knock it down.  Plaintiffs argue that "the Departments premised the rule on the assertion that their new notice was necessary to combat widespread deceptive marketing and consumer confusion, but they failed to substantiate that assertion."  Mem. at 28.  But plaintiffs do not point to anything in the preamble to the fixed

indemnity notice rule to justify their broad characterization.  Instead, plaintiffs attempt to prove their point by criticizing studies that are tangential to the rule.  Plaintiffs (at 26) take issue with a stray statement in the regulatory impact analysis attached to the notice of proposed rulemaking that "recent reports of consumer confusion regarding [short-term limited duration insurance] and fixed indemnity [insurance] support the need to improve consumer understanding of these types of coverage (and their coverage limitations) compared to comprehensive coverage," for not resting on enough evidence about fixed indemnity plans.  NPRM, 88 Fed. Reg. at 44,638–39.  They attack (at 27) a Brookings study cited once in an introductory section of the preamble to the final rule, *see* Final Rule, 89 Fed. Reg. at 23,350 n.107, and several times in the regulatory impact analysis, *id.* at 23,393 nn. 274, 277; *id.* at 23,395 n.279.  And they take issue (at 27–28) with a study by the Government Accountability Office that the Departments cited once in the same introductory section of the preamble to the final rule, 89 Fed. Reg. at 23,350 n.106; twice in a portion of the preamble that does not concern fixed indemnity insurance at all, *id.* at 23,336 n.196, 23,368 n.207; and twice in the regulatory impact analysis, *id.* at 23,393 n.277, 23,396 n.291.  These studies do in fact provide evidence of the existence of consumer confusion and deception in the fixed indemnity market, even if the data on which they rest has limitations that the studies themselves acknowledge.

But none of these sources was even discussed in the Departments' main explanation of why they were adopting the fixed indemnity notice requirement.  The Departments' decision to do so did not rest on "sweeping generalizations" or "claims of widespread consumer confusion and deception," as Plaintiffs suggest.  Mem. at 27.  To the contrary, the Departments' explanation of their decision rested principally on their desire to ensure that consumers were well informed about the nature of fixed indemnity insurance.  *See* Final Rule, 89 Fed. Reg. at 23,380.  That is a reasoned

basis on which to ground a notice requirement and does not require any empirical demonstration that consumers are poorly informed in the absence of such a notice.  *Stilwell*, 569 F.3d at 519.

Finally, Plaintiffs argue that the Departments failed to consider whether state regulation sufficiently informed consumers about the nature of fixed indemnity insurance.  Mem. at 28–29.  Plaintiffs seem to be pointing to two groups of comments.  The first suggested "that Federal regulatory changes are not necessary because States and the [National Association of Insurance Commissioners] have been working on" several model laws "and when those are adopted by States, they will adequately address the Departments' concerns."  Final Rule, 89 Fed. Reg. at 23,382.  The Departments considered and adequately responded to this group of comments.  They explained that, because these model laws were still under development and might not be adopted by all (or any) States once they were finalized, they were not an adequate substitute for the notice requirement adopted in the challenged rule.  *Id.* at 23,383 (noting that "States' adoption of any NAIC model is optional," and that "States may choose to codify some or none of the standards set forth in the NAIC models, which have yet to be finalized").

The second group of comments "stated that amendments to the Federal regulations are not necessary because States have enforcement authority to discipline agents, discipline issuers, limit marketing practices, and limit product features if there are instances of fixed indemnity [insurance] being sold as a replacement for comprehensive coverage."  *Id.* at 23,382.   No commenter suggested (because it is not true) that every State was already using its regulatory authority to "provide consumers considering the purchase (or renewal) of fixed indemnity . . . coverage, and those actually purchasing such insurance, a notice that clearly identifies the insurance as fixed indemnity . . . coverage and is sufficient to put consumers on notice that such coverage is not subject to the Federal consumer protections and requirements for comprehensive coverage."  *Id.*

at 23,382.  The Departments considered this second group of comments, and reasonably responded that a uniform federally-mandated notice would "help ensure that consumers who purchase fixed indemnity . . . coverage are doing so based on an informed decision."  *Id.* at 23,382–83.

The Departments' decision to adopt a fixed indemnity notice was the product of reasoned decisionmaking.

### iii.   The language of the notice is not prohibited by statute, and was reasonably chosen.

Plaintiffs next take issue with the language that the Departments chose to include in the fixed indemnity notice.  In particular, they object to the statement: "IMPORTANT: This is a fixed indemnity policy, NOT health insurance."  Final Rule, 89 Fed. Reg. at 23,389.  Plaintiffs argue that the Departments cannot mandate this statement because Congress has determined as a matter of law that fixed indemnity insurance is, in fact, health insurance within the meaning of certain statutory provisions.  Mem. at 30–32.  But the fixed indemnity notice is simply a plain-English explanation of a particular insurance policy.  It does not say that fixed indemnity insurance is not health insurance within the meaning of some statutory provision, but rather that it is not health insurance as the phrase is commonly understood.  The language of the notice itself clarifies what the Departments mean by the challenged statement.  Individuals with fixed indemnity insurance are "still responsible for paying the cost of [their] care."  Final Rule, 89 Fed. Reg. 23,389.  Fixed indemnity payments are not "based on the size of [one's] medical bill."  *Id.*  And they do not "include most Federal consumer protections that apply to health insurance."  *Id.*  For all of these reasons, fixed indemnity insurance is not "health insurance" as the term is ordinarily used, regardless of whether it comes within particular statutory or regulatory definitions.  *See, e.g.*, CMS, HealthCare.gov Glossary (defining "health insurance" as "A contract that requires your health

29

insurer to pay some or all of your health care costs in exchange for a premium."), https://www.healthcare.gov/glossary/health-insurance/.

And the language of the fixed indemnity notice was not arbitrarily or capriciously adopted. Plaintiffs make four arguments to the contrary.  First, they suggest that the Departments have contradicted themselves by describing fixed indemnity insurance as health insurance in some places, then requiring a notice that it is "NOT health insurance."  Mem. at 32–33.  But it was not arbitrary for the Departments to adopt a plain-language notice to be provided to the general public that varied from the technical language of some statutes and regulations.  Fixed indemnity insurance is not "health insurance" as the term is ordinarily used—as discussed above, it provides fixed cash payments rather than reimbursement for medical expenses—even if it comes within certain technical statutory or regulatory definitions of the term.  *See* Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/ (defining "health insurance" as "insurance against loss through illness of the insured" and especially "insurance providing compensation for medical expenses").

Second, Plaintiffs argue that the Departments have reversed their position on whether fixed indemnity insurance is health insurance, citing various statements in the Federal Register.  Mem. at 33–34.  Again, this argument conflates technical usage for a professional audience with the plain language of notices to the general public.  The fixed indemnity notice adopted in 2014 for use in the individual market similarly describes fixed indemnity insurance as "A SUPPLEMENT TO HEALTH INSURANCE"—*i.e.*, not health insurance itself.  45 C.F.R. § 148.220(b)(4)(iv) (2014). There has been no reversal of position in the language used to inform the public about the nature of fixed indemnity insurance.

Third, Plaintiffs suggest that the language in question is contrary to the evidence before the Departments, which demonstrates that fixed indemnity insurance is, in fact, health insurance. They insist that the "assertion that fixed indemnity benefits do not provide reimbursement for medical expenses" is "false." Mem. at 35 (quotation omitted). But it is not. Fixed indemnity benefits are paid "regardless of any actual health care costs incurred by a covered individual," NPRM, 88 Fed. Reg. at 44,601, and the evidence before the Departments did not demonstrate otherwise. *Cf. Margolis v. Prudential Ins. Co.*, 629 F. Supp. 195, 198 (D.D.C. 1985) (health insurer did not have to compensate insured individual for medical services whose cost had been forgiven, because the insured individual "did not sustain medical expense losses for which [insurer] had a duty to indemnify her").

Finally, Plaintiffs argue that the decision to describe fixed indemnity insurance as "NOT health insurance" in the challenged notice was not reasonably explained. Mem. at 35. Again, the remainder of the notice makes clear why the Departments have chosen to use this description as plain language to be provided to the general public—because people with fixed indemnity insurance are "still responsible for paying the cost of [their] care"; because fixed indemnity payments are not "based on the size of [one's] medical bill"; and because fixed indemnity insurance does not "include most Federal consumer protections that apply to health insurance." Final Rule, 89 Fed. Reg. at 23,389.

The Departments' decision to include the challenged statement in their fixed indemnity notice was neither prohibited by statute, nor arbitrary or capricious.

### iv.   The Departments provided an opportunity to comment on the language of the notice.

Finally, Plaintiffs contend that the final rule was not a logical outgrowth of the Departments' proposal. Plaintiffs argue that, in seeking comment on two versions of a statement

that fixed indemnity insurance is not "comprehensive health insurance," NPRM, 88 Fed. Reg. at 44,626, 44,628, the Departments did not provide an opportunity to comment on the statement that fixed indemnity insurance is "NOT health insurance."  Mem. at 36–37.

A notice of proposed rulemaking need not "specifically identify every precise proposal which the agency may ultimately adopt as a final rule."  *Chem. Mfrs. Ass'n v. EPA*, 870 F.2d 177, 203 (5th Cir. 1989) (cleaned up).  The APA only requires that the notice of proposed rulemaking "adequately frame the subjects for discussion such that the affected party should have anticipated the agency's final course in light of the initial notice."  *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 447 (5th Cir. 2021) (cleaned up).  The Fifth Circuit has discussed this requirement in terms of "fair notice" of the possibility of the final rule.  *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 381 (5th Cir. 2021).  "If interested parties should have anticipated that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period, then the rule is deemed to constitute a logical outgrowth of the proposed rule."  *Id.* at 381–82 (cleaned up).

The final rule was a logical outgrowth of the proposal, because interested parties should reasonably have anticipated the possibility that the final notice might differ by a single word— "comprehensive"—from the versions provided in the notice of proposed rulemaking.  The Departments sought "comments on all aspects of the proposed consumer notice for both individual and group market fixed indemnity excepted benefits coverage, including whether its language, formatting, and placement would achieve the stated aims of informing consumers of the nature of the coverage and reducing misinformation, and whether alternative or additional language or mechanisms or timing for delivery could better accomplish these goals."  NPRM, 88 Fed. Reg. at 44,627.  Interested parties were therefore aware that the Departments were open to concluding that

the language suggested in the notice of proposed rulemaking would not achieve their aims, and that "alternative . . . language" would be preferable.  If interested parties believed that any particular word or words in the proposed notices were crucial and should not be changed, then they "reasonably should have filed their comments on the subject during the notice-and-comment period." *Tex. Ass'n of Mfrs.*, 989 F.3d at 381–82 (cleaned up).

**C.    Any relief should be limited to Plaintiffs' request and the parties before the Court.**

If the Court concludes that the Departments' decision to require a fixed indemnity notice was lawful, but their decision to include the statement that fixed indemnity insurance is "NOT health insurance" was not, then the Court should limit its relief to striking that phrase from the required notice.  Plaintiffs simply ask that, in this circumstance, the "portion of the notice" with the challenged statement "be held unlawful and set aside."  Mem. at 30.  Moreover, that language is severable, as the Departments would have adopted the remainder of the notice in its absence, and included express severability provisions in the rule.  Final Rule, 89 Fed. Reg. at 23,391.

If the Court concludes that the Departments' decision to require a fixed indemnity notice was unlawful, and even if the APA authorizes vacatur of agency action,[5] the Court should decline, as a matter of equitable discretion, to enter a universal vacatur of the fixed indemnity notice requirement.  Text and precedent both make clear that whether to enter vacatur—and the scope of any such relief—is constrained by equitable principles.  And those principles limit proper relief to redressing the injuries of the named parties, thus foreclosing universal vacatur in this case.

---

[5] The Departments preserve for further review the argument that the APA's provision for the courts to "set aside" unlawful agency actions, 5 U.S.C. § 706(2), does not authorize the type of universal vacatur that Plaintiffs seek.  *But see Texas Medical Ass'n v. HHS*, 2024 WL 3633795, at *11–12 (5th Cir. Aug. 2, 2024) (rejecting the argument that the APA does not authorize vacatur).

The APA is not properly read to require vacatur—much less universal vacatur—of challenged action, in light of traditional equitable principles generally restricting relief beyond the parties.  Congress enacted the APA against a background rule that statutory remedies must be construed in accordance with "traditions of equity practice."  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).  The Supreme Court has recently reinforced this principle of interpretation, instructing that, "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity."  *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024).  And the Court explained that even seemingly mandatory statutory language—such as a directive "that an injunction 'shall be granted' if" certain conditions are met—will not "supplant the traditional equitable principles" governing relief.  *Id.* at 1577.  "[S]uch an abrupt departure from traditional equity practice" as requiring relief no matter the equities requires "plain[er]" language than that.  *Id.*; *see also Hecht Co.*, 321 U.S. at 329 (Congress's authorization for courts to issue a remedy "hardly suggests an absolute duty" to grant such relief "under any and all circumstances.").

So too with the APA.  As an initial matter, the APA itself provides for traditional forms of equitable actions and relief, such as "declaratory judgments or writs of prohibition or mandatory injunction," 5 U.S.C. § 703, and explicitly preserves "the power or duty of the court to … deny relief on any … equitable ground," *id.* § 702.  In light of the traditional equitable principles against which the statute was enacted—and which are explicitly incorporated into the statute—there is no sound reason to conclude that Congress did not merely authorize but compelled courts to abandon the "bedrock practice of case-by-case judgments with respect to the parties in each case" by adopting the unremarkable "set aside" language in § 706.  *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring in the judgment) (quotation omitted).

Finally, this construction of the APA—as permitting, but not requiring, universal vacatur—is consistent with Fifth Circuit precedent.  The Fifth Circuit has treated universal vacatur as a discretionary equitable remedy, not one that is automatic or compelled in every case.  *See Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality opinion) (concluding without contradiction from any other member of the Court that the district court could consider on remand "a more limited remedy" than universal vacatur, and instructing the district court to "determine what remedy … is appropriate to effectuate" the judgment), *aff'd*, 602 U.S. 406 (2024); *see Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 952 n.102 (5th Cir. 2024) (noting that the en banc *Cargill* court remanded the case to district court for briefing on the appropriate scope of any relief under the APA).  And the Fifth Circuit has sometimes declined to enter vacatur in favor of a remedy termed "remand without vacatur" when equitable principles so directed.  *E.g.*, *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000).[6]

In this case, the Court could afford complete relief to the plaintiffs through an injunction prohibiting the enforcement of the fixed indemnity notice requirement against them.  In light of the traditional equitable principles incorporated by the APA, the Court should therefore limit any relief to the parties before it.

## CONCLUSION

The Departments' fixed indemnity notice requirement was lawfully adopted and summary judgment should be entered in their favor.

---

[6] In addressing the scope of relief under 5 U.S.C. § 705, the Fifth Circuit recently observed that, "[w]hen a reviewing court determines that agency regulations are unlawful, the *ordinary* result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (emphasis added) (citation omitted).  But "ordinary," of course, does not mean "mandatory."

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*

Date: August 30, 2024